IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

AUG 25 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

| | |
|---|---|
| VINCENT P. BRESNAHAN, JR. *Plaintiff* | CIVIL ACTION NO. 6:10-CV-29 |
| v. | MEMORANDUM OPINION |
| COMMISSIONER OF SOCIAL SECURITY *Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the court upon consideration of the Commissioner of Social Security's ("Commissioner") motion for summary judgment (docket no. 24), the Magistrate Judge's report and recommendation (docket no. 29), and the Commissioner's timely objections thereto. (docket no. 30). For the reasons set forth below, I decline to follow the report and recommendation, and will enter summary judgment in favor of the Commissioner.

**I.**

On March 28, 2008, Administrative Law Judge Mark A. O'Hara (the "ALJ") issued an opinion determining that Plaintiff Vincent P. Bresnahan ("Bresnahan") was not disabled under 42 U.S.C. §§ 416(i), 423(d), and 1382c(a)(3)(A), and consequently that he was not entitled to disability, disability insurance, or supplemental security income under the Social Security Act. (Administrative Record, "R." at 25). On appeal, Bresnahan contends that the ALJ's decision was improper because it relied on his "*de minimis* involvement" with an antiquing hobby, and improperly discounted the testimony of his treating physician, Dr. Larry Merkel ("Merkel"). Compl. ¶ 2. The Magistrate Judge agreed with the latter claim, and did not reach the former.

1

Merkel began treating Bresnahan at least as early as 1995 (R. 63), prior to the alleged onset date of disability on June 1, 1996. His treatment continued at least through February 12, 2008 (R. 600) and was consistent except for the one-year period beginning July 1997, when Merkel was on sabbatical. (R. 409). Significantly, Merkel opined in a "Medical Assessment of Ability to do Work-Related Activities," dated January 24, 2008, that Bresnahan has poor capacity for work in the following areas: maintaining personal appearance; demonstrating reliability; understanding, remembering and carrying out complex job instructions; relating to coworkers; dealing with the public; interacting with supervisors; dealing with work stresses; functioning independently; and maintaining attention/concentration. (R. 530-533). In a separate document, also dated January 24, 2008, he further concluded that Bresnahan had a listed impairment[1] consisting of an affective disorder under the criteria of listing 12.04 (R. 520).

The ALJ rejected Merkel's conclusions, instead adopting the positions of state agency physicians Richard Milan ("Milan") and A. John Kalil ("Kalil"). (R. 21). In functional capacity assessments dated November 16, 2006 and January 26, 2007, respectively, Milan and Kalil both opined that Bresnahan had certain moderate mental impairments, but that "[t]he limitations resulting from the impairment[s] do not prevent the claimant from meeting the basic mental demands of competitive work on a sustained basis." (R. 479; 513). The Magistrate Judge reasoned, however, that since these opinions were issued prior to Merkel's January 24, 2008 assessments, they were not informed by Merkel's long-term perspective, and thus did not

---

[1] The Social Security Administration has a five-step process for evaluating disability and hence entitlement to benefits. 20 C.F.R. §§ 404.1520(a) and 416.920(a); *See Campbell v. Apfel*, No. 97-2128, 1998 WL 911740, at *2 (4th Cir. Dec. 31, 1998). At step three, the ALJ determines whether the claimant has demonstrated an "impairment, or combination of impairments, which meets or equals the level of severity specified in any of the Listed Impairments set forth in 20 C.F.R. § 404.1525." 1998 WL 911740, at *2. If so, and the claimant meets the duration requirement, 20 C.F.R. § 404.1509, the claimant is disabled.

2

constitute substantial evidence on which the ALJ could properly base his determination to disregard the treating physician.

A district judge must review *de novo* those portions of the report and recommendation to which a party has specifically objected. *See* 28 U.S.C. § 636(b)(1); *Miles v. Richland Memorial Hosp.*, 108 F.3d 1372 (4th Cir. 1997) (unpublished table opinion) (citing *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985)). The Commissioner specifically objects that Merkel's assessments were of the class of treating physician opinions that are not entitled to deference; that the record otherwise supports the ALJ's decision; and that Milan and Kalil actually had the benefit of Merkel's long-term treatment records, contrary to the Magistrate Judge's determination.

Merkel offered a disability opinion on August 31, 2006, stating that Bresnahan had a number of mental disorders that "more often than not . . . have severely hindered his daily functioning." (R. 409). Moreover, both Milan's and Kalil's assessments show that they considered Merkel's and other medical records up to that period. (See R. 492-493, 508-509). I therefore agree with the Commissioner that Milan and Kalil were able to reap substantial benefit from Merkel's long-term perspective.

A treating physician's opinion is generally entitled to significant weight. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). Indeed, it is entitled to controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 44.1527(d)(2). However, certain issues, such as the claimant's residual functional capacity, and satisfaction of the requirements for a listed impairment, are "reserved to the Commissioner." 20 C.F.R. § 44.1527(e). Thus, a treating physician's conclusions on those issues are not "give[n] any special significance." *Id.* Accordingly, Merkel's mental capacity evaluation and listed impairment

3

opinion "amount to [] disability determination[s], not [] medical opinion[s] entitled to controlling weight under the treating physician rule." *Truman v. Astrue*, No. 7:08-cv-584, 2010 WL 552126 (W.D. Va. Feb. 16, 2010). The ALJ was correct to so hold. (R. 21).

In addition, "if a physician's opinion is . . . inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Furthermore, the ALJ "may give little weight to a treating physician's conclusory opinions where the physician's own medical notes and the claimant's daily activities are inconsistent with his medical opinion." *Dennison v. Astrue*, No. 3:10cv-109, 2011 WL 2604847, at *2 (W.D. Va. July 1, 2011) (citing *Craig* 76 F.2d at 590). Accordingly, the ALJ rejected Merkel's opinions for well substantiated reasons, stating:

> Dr. Merkel's own records contain multiple and consistent notations that medication lessened the claimant's symptoms, enabling him to begin [an antiques] business involving contacts with the public, contacting antique shops for rental space, entering into rental space contracts, preparing and displaying his products for sale, and maintaining a catalogue and records of his stock and sale transactions. Moreover, the claimant is not found to be so unable to focus and concentrate that he cannot drive independently, maintain sufficient hygiene, move about in society, place prices on his items for sale, and refinish many items . . . .

(R. 23). The foregoing is well supported. Merkel often reported that Bresnahan benefitted significantly from medication. (R. 246, 337, 364, 545-46, 579, 624, 627). *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1996) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). Merkel's notes also show that Bresnahan engaged in a range of daily activities, including attending weekly group therapy sessions, (R. 18, 418, 440, 442, 448-50, 457-59, 560-64, 569, 576-79, 585, 588, 591, 593-96, 606-09, 611, 614), and caring for his cats (R. 23, 564, 566).

In addition, it is well established that the Commissioner may consider "work done by the claimant after the alleged onset of disability as tending to show that the claimant was not then

4

disabled." *Sigmon v. Califano*, 617 F.2d 41, 42-43 (4th Cir. 1980). Here, the ALJ relied in large part on the evidence that Bresnahan ran two antiques shops. (*See* R. 23, 210, 246, 290, 303, 305, 327, 381, 435, 535, 546, 561, 567). In the course of the business, he interacted with others (R. 562, 575, 578), restored furniture (R. 546), occasionally purchased inventory (R. 57), drove between locations in Amherst and Danville regularly,[2] (R. 50-52, 613), and priced inventory using reference books (R. 53). While his work was apparently not profitable, it nonetheless constituted "gainful work activity," within the meaning of the regulations. 20 C.F.R. § 404.1572(b) (defining "gainful work activity" as "the kind of work usually done for pay or profit, whether or not a profit is realized.").

Finally, I address Bresnahan's claim that his antiquing was merely a hobby that required minimal involvement. It is evident that the ALJ did not credit that claim, concluding that both Bresnahan and Merkel downplayed Bresnahan's role in the business. (R. 23). An ALJ's credibility determination is entitled to particular deference. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). In addition, the ALJ noted inconsistencies within Bresnahan's testimony, and between his testimony and the other evidence. Although Bresnahan initially stated that he did not repair or refinish any items he sold, he later admitted that he did so, albeit infrequently. (R. 13, 38, 56-67). Even this testimony was in contrast to Merkel's February 12, 2008 letter stating that "over the years [Bresnahan] has attempted to restore and sell antiques." (R. 14, 601). In addition, while the same letter indicated that antiquing was "at most . . . a hobby," the ALJ provided an exhaustive review of Merkel's treatment notes which suggested otherwise. (R. 14 n. 1). The ALJ noted, for example, that on November 8, 2007, Merkel

---

[2] I take judicial notice that this is approximately a 170-mile round trip.

5

reported that Bresnahan "has antiques at home that he has been cleaning up. He goes to the [Amherst] store daily and to Danville once per week." (R. 14 n.1, 613). The ALJ reasonably concluded that the maintenance of two separate antique shops belied claims that this alleged hobby required minimal attention. (R. 14-15).

## II.

For the foregoing reasons, I decline to follow the report and recommendation, and will grant summary judgment in favor of the Commissioner.

The Clerk of the court is directed to send a certified copy of this opinion to all counsel of record, and to the Plaintiff.

Entered this 25th day of August, 2011.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE